**Docket No. 23-55524**

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

---

VITALY SMAGIN,

*Petitioner-Appellee,*

v.

ASHOT YEGIAZARYAN,

*Respondent-Appellant.*

———————————————

*Appeal from a Decision of the United States District Court for the Central District of California, No. 2:14-cv-09764-RGK-PLA · Honorable R. Gary Klausner*

## RESPONDENT-APPELLANT'S REPLY BRIEF IN FURTHER SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR A STAY PENDING APPEAL -- RELIEF NEEDED BY JUNE 23, 2023

VINCENT LEVY, ESQ.
KEVIN D. BENISH, ESQ.
BRIAN T. GOLDMAN, ESQ.
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York 10017
Tel: (646) 837-5151
vlevy@hsgllp.com
kbenish@hsgllp.com
bgoldman@hsgllp.com

*Attorneys for Respondent-Appellant*

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................... 1

    I.    Ashot Is Likely To Succeed On the Merits ........................................ 1

        A. Adjudicatory Comity ................................................................. 1

        B. Impossibility And Foreign-Sovereign Compulsion Doctrines ... 4

        C. Additional Unaddressed Arguments ........................................... 6

    II.   Ashot Will Likely Suffer Irreparable Harm Absent A Stay ............ 7

    III.  The Equities And The Public Interest Favor Ashot ........................ 9

CONCLUSION .................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
   501 U.S. 1301 (1991) .................................................................................. 9

*Credit Suisse v. U.S.D.C, C.D. Cal.*,
   130 F.3d 1342 (9th Cir. 1997) ..................................................................... 8

*In re Philippine Nat'l. Bank*,
   397 F.3d 768 (9th Cir. 2005) ....................................................................... 8

*In re Request from Liechtenstein Pursuant to the Treaty Between the United States of America and Liechtenstein on Mutual Legal Assistance in Criminal Matters in the Matter of Arthur Vogt and Walter Maslowski as a Witness*,
   No. 07-mc-00015 (M.D. Fla. 2007) ............................................................ 9

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ....................................................................... 1

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ....................................................................... 3

*Personal Elec. Transports, Inc. v. Office of U.S. Tr.*,
   313 F. App'x 51 (9th Cir. 2009) .............................................................. 1, 6

*Reebok Int'l Ltd. v. McLaughlin*,
   49 F.3d 1387 (9th Cir. 1995) ....................................................................... 2

*Rostker v. Goldberg*,
   448 U.S. 1306 (1980) .................................................................................. 9

*Sampson v. Murray*,
   415 U.S. 61 (1974) ...................................................................................... 9

*Smagin v. Yegiazaryan*,
   733 F. App'x 393 (9th Cir. 2018) ............................................................... 10

*Societe Internationale Pour Participations Industrielles v. Rogers*,
   357 U.S. 197 (1958) ............................................................................... 4

*United Mine Workers v. Bagwell*,
   512 U.S. 821 (1994) ............................................................................... 7

**Other Authorities**

Extradition treaty between the United States of America and Liechtenstein,
   50 Stat. 1337 (1937) ............................................................................... 8

Restatement (Fourth) of Foreign Relations Law § 424 ............................... 3

# ARGUMENT

I. **Ashot Is Likely To Succeed On the Merits**

Ashot has demonstrated a "substantial case on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966-967 (9th Cir. 2011). Indeed, Smagin either ignores or misconstrues a critical issues at the heart of this appeal and stay application.

A. **Adjudicatory Comity**

To begin, the Court is likely to reverse the Order on the ground of adjudicatory comity, just as it did last time the district court sought to superintend the conduct of foreign litigation. Opening Br. ("Br.") 9-12.

Smagin does not dispute that the district court's contempt order is requiring Ashot to take positions and refrain from taking positions in foreign proceedings, including proceedings in England, Monaco, and Russia. He does not dispute that those jurisdictions have a compelling interest in superintending their own court proceedings, and that Liechtenstein has a compelling interest in enforcement of its sanctions regime (an interest shared by the United States). He does not dispute that these foreign forums are adequate forums (indeed, he started some of the foreign cases himself). He does not dispute that he is a "proxy plaintiff" for the Russian government whose U.S. litigation is a tactic to target Ashot, an exiled politician. These concessions, in and of themselves, establish a likelihood of success on the merits. *See, e.g.*, *Personal Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 F. App'x

1

51, 52 (9th Cir. 2009) (affirming district court holding that party waived argument by failing to raise it in opposition brief).

Even beyond that, none of Smagin's three arguments persuades. *See* Opp. 14-16. *First,* Smagin argues that adjudicatory comity is inappropriate because Ashot allegedly could have complied with the district court's injunction "long before" the Liechtenstein sanctions came into effect. Opp. 14. As discussed at pp. 4-6 below, Smagin is wrong on the law and the facts. Regardless, Smagin cites no law—and counsel is aware of none—explaining why the date of enactment of foreign law renders adjudicatory comity inapplicable. And the argument makes no sense; the question on this appeal is whether the May 2023 order being appealed imposes purge conditions that <u>now</u> violate adjudicatory comity.

*Second*, Smagin argues that the district court's contempt order does not command Ashot to violate Liechtenstein's sanctions. Opp. 14-15. This is again wrong as discussed below at pp. 4-6. Moreover, as Ashot pointed out (and Smagin did not dispute), there are many other reasons besides the Liechtenstein sanctions why the Order should be reversed on adjudicatory-comity grounds, including *inter alia* the Order's interference with the management of foreign trusts and its command that Ashot make specific arguments in foreign legal proceedings. Br. 11 (citing *Reebok Int'l Ltd. V. McLaughlin*, 49 F.3d 1387, 1395 (9th Cir. 1995)). These considerations, again, stand unrebutted by Smagin.

*Third*, Smagin argues that the purge conditions are consistent with the rulings of the Liechtenstein court holding that Ashot's trustee-appointees lack any authority. This says nothing about the district court's direct interference with judicial proceedings in the other jurisdictions (England, Monaco, Russia), and in any event the Liechtenstein courts plainly have jurisdiction over the *res* at issue in this case—namely, trusts created by Liechtenstein law and the assets they hold— and Liechtenstein's sanctions prohibit the taking of the action ordered by the district court.

*Finally*, Smagin misapprehends the doctrine of adjudicatory comity and this Court's controlling decision in *Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014), arguing that adjudicatory comity applies only when another "case" is "pending" in a foreign court. Opp. 15-16. Smagin has it completely wrong, as *Mujica* itself makes clear when it recognizes that adjudicatory comity may apply "to a *past or potential* judicial proceeding elsewhere." *Mujica*, 771 F.3d at 600-01 (emphasis added). Indeed, in *Mujica* itself, the Court found adjudicatory comity appropriate even through there was *no pending foreign action*. *Id.* at 613; *see also* Restatement (Fourth) of Foreign Relations Law § 424 Reporters' Note 9 (observing that the Ninth Circuit "authorize[s] abstention on grounds of international comity even in the absence of a pending and parallel foreign proceeding and without a showing of exceptional circumstances").

3

### B. Impossibility And Foreign-Sovereign Compulsion Doctrines

Ashot is also likely to prevail on his impossibility and FSC arguments. As shown in his opening brief, and two opinions of Liechtenstein lawyers (Br., App'x B), the contempt order requires Ashot to undertake actions that are barred—under penalty of imprisonment—by sanctions Liechtenstein adopted in response to Russia's invasion of Ukraine. In his brief, Smagin ignores the plain text of the sanctions and the legal opinions offered by Ashot and, offering <u>no</u> countervailing legal opinion regarding the sanctions, he tries his hand at misdirection. This fails.

*First*, Smagin argues that the sanctions are "inapposite" because they were "enacted in March 2022—several years after Yegiazaryan's long history of non-compliance began." Opp. 14. Smagin is incorrect. The court stated that it was imposing sanctions to "encourage his compliance" now—not to address prior conduct. Dkt. 415 at 8. That being so, it was improper to require Ashot to take steps violating sanctions <u>currently in force</u>. *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 212 (1958) (addressing present "inability to comply because of foreign law"). Ashot obviously had nothing to do with Liechtenstein's adoption of legal regulations barring the taking of actions that the district court later ordered him to take.

*Second*, Smagin asserts that "nothing in the May 22 Order conflicts with the Liechtenstein ordinance." Opp. 18; *see also id.* 14-15. Wrong. The entire purpose

4

of the Order—the sole justification for holding Ashot in contempt—was to require Ashot to take affirmative steps to facilitate the transfer of the assets of the Alpha Trust to Smagin. At the risk of repetition, the injunction grounding the contempt was an order requiring Ashot not to "prevent, hinder, or delay ***Smagin's ability to collect on the assets of the Alpha Trust***." District Court Dkt. 245. To purge his contempt, Ashot has now been ordered to take affirmative steps to facilitate such a distribution. That is the whole point of the Order and the only plausible justification for holding Ashot in contempt. Indeed, Smagin concedes the point when he tries to explain why a stay would cause him harm; he says a stay would frustrate his ability to "collect[] on his judgment" by going after the assets of the Alpha Trust. Opp. 20. But, as Smagin nowhere disputes on this stay motion, distributing the assets of the Alpha Trust to Smagin would clearly violate the Liechtenstein sanctions, because Smagin is Russian. This is clearly a conflict.

Moreover, the district court ordered Ashot to remove persons allegedly acting as trustees and protectors of assets of the Alpha Trust. Smagin disputes that it would violate the sanctions for Ashot to take such steps, but as the Liechtenstein lawyers opined, "removal of trustees . . . of Alpha Trust must be considered as an act prohibited by the Liechtenstein sanctions." Br., App'x B at 3. Smagin offers no legal opinion expressing a contrary view.

Finally, Smagin gets nowhere by offering selective quotations of the

5

ordinance. The ordinance does not only bar Russian citizens from establishing trusts or acting as trustees (or in a similar capacity), as Smagin claims. Opp. 14. In a portion of the sanctions that Smagin conveniently omits, the sanctions also bar "enabl[ing] another person" to "act as a trustee" of certain trusts (including the Alpha Trust). Br., App'x A (translating Art. 29d(2)). Smagin effectively concedes that the Order requires Ashot to take action that would violate this prohibition, as he asserts that Ashot must "get out of the way so the legitimate trustees may control the trust[.]" Opp. 15. Indeed, that is the entire point of holding Ashot in contempt for the conduct of third-parties and requiring Ashot to take affirmative steps to remove those third-parties as regards the assets of the Alpha Trust. Again, this is a clear conflict between the Order and foreign law.

### C. Additional Unaddressed Arguments

Finally, the Court should conclude that Ashot is likely to prevail on his two remaining merits arguments, given that Smagin does not respond to them at all. *Personal Elec. Transports*, 313 F. App'x at 52 (argument not addressed in opposition is waived).

*First*, Ashot explained that the contempt should be set aside because the injunction was insufficiently specific and the evidence of the violation was specific. For example, Ashot pointed out that Smagin's only evidence of contempt in English court consists of a filing dated July 2019, which Smagin alleged to be in

6

violation of a court order dated April 2020, and also noted that Smagin told the English court he would not seek contempt (but then later did so). Smagin offers no response to this or the other substantive defects in the contempt order on review.

*Second*, Ashot made the point that, under the Supreme Court's opinion in *Bagwell* and its progeny, this contempt proceeding "require[d] elaborate and reliable factfinding" and heightened procedural protections because it concerned contempt over "out-of-court disobedience to [a] complex injunction[]." *United Mine Workers v. Bagwell*, 512 U.S. 821, 834 (1994). Here again, Smagin does not dispute the legal point that heightened procedures can be required, and also does not try to defend the procedures that were employed in this case.

\*     \*     \*

In sum, the district court is improperly seeking to superintend foreign litigations, and it is likely that this Court will reverse for much the same reason as it did under the doctrine of adjudicatory comity. Ashot is also likely to prevail on the basis that the district court has ordered him to take steps violating Liechtenstein sanctions. And Smagin has no response at all to the balance of the arguments that Ashot makes on the merits, arguments that are also sufficient to reverse the Order.

## II. Ashot Will Likely Suffer Irreparable Harm Absent A Stay

The harm that Ashot will suffer absent a stay is certainly irreparable and more than likely: If a stay is not entered, Ashot will be required to violate either

7

the orders of the district court, or the laws of Liechtenstein. That is irreparable under controlling Circuit law. *Credit Suisse v. U.S. Dist. Ct. for Cent. Dist. of California*, 130 F.3d 1342, 1346 (9th Cir. 1997) ("Requiring the Banks to choose between being in contempt of court and violating Swiss law clearly . . . could not be remedied[.]"); *In re Philippine Nat'l. Bank*, 397 F.3d 768, 774 (9th Cir. 2005). Ashot's loss of his appellate right, should he comply with the district court's order and violate Liechtenstein law, would also be irreparable, as is undisputed.

Smagin does not address these cases, even though they are directly on point. Instead, Smagin attacks a strawman. He says that "Yegiazaryan would be no worse off than he is today" because this Court could just "reverse the additional sanctions." That misses the point. During the appeal, Ashot will be subject to an order that requires him to violate Liechtenstein law. If Ashot abides by the court's order given the district court's threat that it will imprison him, he would have lost his right to appeal and put himself at risk of imprisonment in Liechtenstein. That is irreparable, and this Court could not undo the harm visited upon Ashot in the meantime. That is indeed the clear holding of *Credit Suisse*.

Smagin's other response is to say that "Yegiazaryan lives in California." It is unclear why that matters. The United States and Liechtenstein have an extradition treaty (*see* 50 Stat. 1337; 1937 WL 33183); that treaty will likely be enforced, and the sanctions that Ashot would violate call for up to three-years'

8

imprisonment. *Cf. In re Request from Liechtenstein Pursuant to the Treaty Between the United States of America and the principality of Liechtenstein on Mutual Legal Assistance in Criminal Matters in the Matter of Arthur Vogt and Walter Maslowski as a Witness*, No. 07-mc-00015 (M.D. Fla. 2007) (providing U.S. legal assistance in aid of foreign criminal matter).

**III.   The Equities And The Public Interest Favor Ashot**

Finally, balancing the equities in this case is straightforward. Weighing this balance requires "explor[ing] the relative harms to applicant and respondent, as well as the interests of the public at large." *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers).

Smagin says that if a stay were entered he would suffer delay in obtaining assets of the Alpha Trust to satisfy his arbitration award. Opp. 20 ("This pattern of misdirection and obfuscation has prevented Smagin from collecting on his judgment for more than seven years."). That is the very definition of *reparable* harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[I]njuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). Worse, this is not cognizable harm at all, because the Liechtenstein sanctions bar Smagin from receiving any funds.

In that light, "[t]he balancing" of the equities is "quite easy in the present case, since [Smagin has identified] no irreparable harm that granting the stay

9

would produce." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers). Quite starkly, there is clearly irreparable harm on Ashot's side of the ledger, and no harm at all on Smagin's.

Finally, the public interest supports entering a modest stay pending appeal to ensure that the sanctions regime in Liechtenstein related to the Ukraine war are abided by—and not circumvented by a Putin proxy—and because, as this Court has held, the public interest supports "respect[ing]" the courts of others countries, including "the Liechtenstein Court of Justice's jurisdiction over the Alpha Trust." *Smagin v. Yegiazaryan*, 733 F. App'x 393, 397 (9th Cir. 2018).

## CONCLUSION

The Order and any further contempt proceedings should be stayed.

June 21, 2023

Respectfully submitted,

/s/ *Vincent Levy*
Vincent Levy
Kevin D. Benish
Brian T. Goldman

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York
(646) 837-5120
vlevy@hsgllp.com

*Attorneys for Respondent-Appellant*

## **CERTIFICATE OF COMPLIANCE**

Respondent-Appellant submits this certification of compliance with Fed. R. App. P. 27. This reply brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in Times New Roman 14-point. It complies with the length limits of Fed. R. App. P. 27(d)(2)(C) because the brief contains 2,304 words and has been prepared using Microsoft Word.

DATED: June 21, 2023

By: /s/ *Vincent Levy*
Vincent Levy